Sierra Anderson
9485 Lamar St.
Spring Valley, CA 91977
(619)464-1856

FILED

2010 APR -1  PM 4: 25

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

DEPUTY

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

Sierra Anderson
    Plaintiff,

Vs.

City of Lemon Grove; Lemon Grove
Sheriff's Department; Det Cornelius;
Officer Weber; Officer Rinder; and
Person Entities Unknown; County
Of San Diego Health and Human
Services Agency and San Diego County
Protective Services Workers; Shelly
Paule, Tonya Sloan, Silvia Williamson,
Ryan Mally, Connie Cain
Candace Cohen, and Persons and
Entities Unknown

CASE NO. '10 CV0689 IEG    AJB

JURY TRIAL DEMANDED

## **COMPLAINT**

This case arises from the unlawful seizure of an infant child from the care and

custody of his mother, Sierra Anderson, and the efforts to permanently separate

Mrs. Anderson from her child. The seizure of the child- in this case separating her 8

month old son from his mother's care while at home- was the beginning of Sierra

Anderson and her child's ordeal. Almost two year's after Defendant Silvia

Williamson took her infant child, Mrs. Anderson's family has yet to be reunited.

The seizures of Samari Anderson (minor) and the prolonged and continuing

separation of the Anderson family, was without prior judicial authorization, and without any basis to believe the children were abused, neglected or in imminent threat or harm. This action is brought, inter alia, to redress Defendants' arbitrary and malicious abuse of government power. Plaintiff, Sierra Anderson, on her own behalf, therefore, brings this action for deprivation of constitutional rights under color of law, 42 U.S.C. § 1983, and supplemental state law claims.

Plaintiff alleges as follows:

## PARTIES

1. Plaintiff Sierra Anderson is a resident of California, residing at 9485 Lamar St, Lemon Grove, California.

2. Defendant Alton Cornelius is an individual and, at all times relevant to this complaint, was a detective at the Lemon Grove Sheriff's Department located at 3240 Main Street, Lemon Grove, California. Defendant Cornelius is sued in his individual and official capacity.

3. Defendant Weber is an individual and, at all times relevant to this complaint, was an officer at the Lemon Grove Sheriff's Department located at 3240 Main Street, Lemon Grove, California. Defendant Weber is sued in his individual and official capacity.

4. Defendant Rinder is an individual and, at all times relevant to this complaint, was an officer at the Lemon Grove Sheriff's Department located at 3240



Main Street, Lemon Grove, California. Defendant Rinder is sued in his individual and official capacity.

5. Defendant Shelly Paule is an individual and, at all times relevant to this complaint, was a supervising protective services worker located at 151 Van Houten Avenue, El Cajon, California. Defendant Paule is sued in her individual and official capacity.

6. Defendant Tonya Sloan is an individual and, at all times relevant to this complaint, was a protective services worker located at 151 Van Houten Avenue, El Cajon, California. Defendant Sloan is sued in her individual and official capacity.

7. Defendant Ryan Mally is an individual and, at all times relevant to this complaint, was a protective services worker located at 151 Van Houten Avenue, El Cajon, California. Defendant Mally is sued in his individual and official capacity.

8. Defendant Cain is an individual and, at all times relevant to this complaint, was a supervising protective services worker located at 151 Van Houten Avenue, El Cajon, California. Defendant Cain is sued in her individual and official capacity.

9. Defendant Silvia Williamson is an individual and, at all times relevant to this complaint, was a protective services worker located at 7065 Broadway, Lemon Grove, California. Defendant Williamson is sued in her individual and official capacity.

10. Defendant Candace Cohen is an individual and, at all times relevant to this complaint, was county council located at 4955 Mercury, San Diego, California. Defendant Cohen is sued in her individual and official capacity.

## JURISDICTION & VENUE

11. This action arises under the Constitution and laws of the United States and under the Constitution and the laws of the Commonwealth of California. This court has subject matter jurisdiction pursuant to 436 U.S.C. § 658, 28 U.S.C. § 1331 and supplemental jurisdiction over plaintiff's federal and state claims pursuant to 28 U.S.C. § 1367, 42 U.S.C. § 14141, 18 U.S.C. § 242, 18 U.S.C. § 241, and 18 U.S.C. § 245.

12. This action arose from actions and occurrences, which took place in San Diego County, California. Venue in this court is proper pursuant to 28 U.S.C. § 1391(b).,

### FACTUAL BACKGROUND

**A. HHSA Seized Custody of Samari Anderson without Prior Judicial Authorization and Without Any Basis to Believe that Samari was Abused, Neglected or in Any Danger of Imminent Harm.**

13. Samari Anderson was born on August 14, 2007.

14. On March 30, 2008, Lemon Grove Sheriff's Deputies received a call to investigate an assault with a deadly weapon committed on Plaintiff's husband Percy Anderson by Mrs. Anderson's 16 year old sister Jamaica Reid, who was living with Sierra, Samari, and Samari's five half –brothers and half-sisters at the time. When sheriff's deputies arrived at the home, they took a statement from Percy and photographs of Percy's injuries. The sheriff's were then looking for Jamaica to arrest her for assault with a deadly weapon.

15. On April 1, 2008, a detective began a follow-up investigation in the case . He interviewed Jamaica at school on April 2, 2008. When the detective arrived to

interview Jamaica, Jamaica was already meeting with an Agency social worker later identified as Defendant Sylvia Williamson. Jamaica told the detective and the social worker that earlier in the afternoon hours of March 29, 2008, Percy became upset with his oldest daughter Prea'jhana, for talking to boys on the internet and pushed or kicked her down the stairs. Jamaica admitted that she struck Percy over the head several times with a mop handle. Jamaica never made any sexual abuse allegations when talking to Defendant Williamson, or Defendant Cornelius.

16.   On April 3, 2008, the same detective interviewed Prea'jhana. Prea'jhana told the detective that her father did become upset with her on March, 29. 2008, for talking to boys on the internet, but did not strike her, kick her or shove her. Prea'jhana denied hearing or seeing any type of assault in the home involving her, Sierra, Percy, or Jamaica.

17.   On April 4, 2008, Defendant Williamson went to the children's school to interview Samari's half-siblings without their father Percy Anderson Present. Earlier that same day Petitioner's husband Percy Anderson went to the school to pick up one of the children for a doctor's appointment. While in the office, Percy Anderson ran into Defendant Williamson and asked her if she was a social worker there to speak to his children. Mr. Anderson questioned Defendant Williamson due to her telling Mr. and Mrs. Anderson that she was going to stop by to speak to them. She never informed the Anderson's that she would be going to the children's schools questioning them. Defendant Williamson asked Mr. Anderson his name, and he told her. Her response was "no, I am not here for your children". Defendant Williamson failed to identify herself when questioned. When Defendant Williamson

questioned Samari's half-siblings Kailani, Kaylisha, and Karson about being abused, or ever seeing anyone in the home abused the children all told her no. Defendant Williamson also questioned the children about hearing an incident between Percy and his oldest daughter Prea'jhana, and all three children were adamant in their denials of seeing any physical abuse.

18.    On April 4, 2008, Samari was removed from his mother's custody along with his half-siblings by Defendant Williamson and two sheriff's deputies who were later identified as officer's Rinder and Weber, and detective Cornelius. Mrs. Anderson was four-months pregnant with her daughter Nevaeh. When Mrs. Anderson questioned Defendant Williamson as to why her son was being removed she stated "because of domestic violence in the home between your husband and your sister, but that's the only reason there is nothing wrong with the children". Mrs. Anderson asked Defendant Williamson to see a warrant or a court order, and she told her "no, wait until court when the other social worker gets on your case".

19.   On April 9, 2008 Defendant HHSA through Defendant Sloan, filed a "dependency" petition alleging Samari's sibling Jamaica Reid had been raped and sexually abused and Mrs. Anderson's husband Percy Anderson would make Jamaica give him "blow jobs" by holding a gun to her body, resulting in substantial risk of abuse or neglect to Samari  under section 300, subdivision (j) . Under California law, a "dependent child" is "a minor that is in the custody of the court because he or she was abused, neglected, or molested, or is physically dangerous to the public because of a mental or physical disorder.

20.   On April 9, 2008 a detention hearing was held. The court made a prima facie finding on Samari's petition and ordered him detained in a licensed foster

care.

21. On April 22, 2008, Defendant Sloan filed an addendum report, to which she attached a written statement from Samari's foster mother, who complained that Samari was brought to her home dirty, with overgrown fingernails and toenails, patches of skin from eczema, diaper rash and a moldy bottle.

22. Medical records indicate that Mrs. Anderson took Samari to his doctor's appointments on a regular basis. Mrs. Anderson repeatedly sought medical care for Samari's dry skin patches which were due to eczema. Samari's nurse practitioner Susan Dealy was a witness at trial, and she testified September 29, 2008. Dealy testified that she had not noticed any signs of abuse and neglect with Samari, and if she would have she would have made a note of that in his chart. She never noticed any signs of neglect, nor did she ever find Samari dirty, uncared for, or having any marks or bruises. Samari was actually brought into La Mesa Pediatrics on April 3, 2008, the day before he was removed from his home by Defendant Williamson. On April 3, 2008, Samari was diagnosed with thrush, which is a minor infection in the mouth that is very common in infants and is not cause for concern regarding neglect.

23. Defendant Sloan refused Mrs. Anderson's request to return Samari to her care, and refused Mrs. Anderson's request to place Samari in the home of her aunt, Vickie Johnson, who was willing to accept to care for Samari. Yet, Samari's half siblings then permanently residing in Mrs. Anderson's residence and present at the time of the seizure of Samari three of which were placed with their mother, and his other two half-siblings were placed with relatives.

24.   Defendant Williamson seized Samari on April 4, 2008 without prior judicial authorization, without any factual basis to believe that Samari had been abused, neglected or was in danger of imminent harm, and without permitting less restrictive means to alleviate any threat that the alleged condition of Mrs. Anderson's residence constituted to Samari's safety.

25.   On April 23, 2008, Defendant Sloan interviewed three of Samari's half siblings Kailani, Kaylisha, and Karson together. Defendant Sloan questioned the children about being spanked with a belt. All three reported that they had been whipped with a belt before. Karson and Kaylisha reported that Percy hit and pushed Prea'jhana, and she fell down the stairs. Less than three weeks earlier, however, they had reported to social worker Sylvia Williamson that they did not know anything about the incident between Prea'jhana and their father. Kailani also reported at the beginning of April 2008 that there was no physical discipline in the home, and her father did not hit her with a belt.

26.   Defendant Sloan's April 30, 2008, jurisdiction/disposition report recommended that Samari be declared a dependant child under section 300, subdivision (j), removed from his parents' custody under section 360, subdivision (c), and placed in a confidential licensed foster home. Defendant Sloan also recommended that Mrs. Anderson participate in individual counseling and a parenting education program.

27.   At the April 30, 2008, hearing scheduled for jurisdiction and disposition determinations, trial dates were set for all of the children removed from the home, including Samari. Trial was continued to August 2008.

28.    On July 16, 2008, HHSA filed an amended petition for Samari. Samari's petition was amended to add a second section 300, subdivision (j), count alleging that Percy pushed and threw Prea'jhana over the balcony on March 31, 2008, causing her to fall down the stairs.

29.    On July 25, 2008, Mrs. Anderson's trial attorney asked to be relieved due to conflicts. Their request was granted, and new counsel was appointed for Mrs. Anderson. The trial was then continued to begin in September and end in October 2008.

30.    August 3, 2008, Mrs. Anderson's visits were terminated because the crisis house that facilitated Mrs. Anderson and Samari's visits emailed Defendant Sloan and told her that Percy Anderson was dropping Mrs. Anderson off for the visits, and they did not feel comfortable with that because they felt that Percy Anderson was going to kidnap Samari. There was never an order stating that Percy Anderson could not drop Mrs. Anderson off for her visits. August 8, 2008, Mrs. Anderson called Defendant Sloan and asked about reestablishing visits with Samari. Mrs. Anderson was then placed on a waiting list for the next available visitation timeslot. All of Mrs. Anderson's visits prior to August 2008 had been positive.

31.    As of August 14, 2008, Mrs. Anderson had completed a 12-week parenting class through the San Diego Black Infant Health Program. The letter indicating her completion of the program and her certificate of completion were admitted into evidence on October 1, 2008.

32.    On September 29, 2008, trial began. The first witness to testify was Defendant Sloan. Defendant Sloan testified that the first step in her investigation

after being assigned this case on April 4, 2008, was to interview Samari's half-sibling Prea'jhana in her office. Prea'jhana did not mention any abuse to Defendant Sloan at that time. Shortly after the interview with Prea'jhana, Defendant Sloan interviewed Samari's other three half-siblings Karson, Kailani, and Kaylisha together at their elementary school. Defendant Sloan testified that it was not normal procedure to interview three children together as she did in this case because interviewing children together could cause them to influence one another's statements. Sloan also testified that none of the children in this case, including Samari had been examined for signs of physical abuse. Defendant Sloan also testified that Samari was a healthy, happy baby and he did not have any marks or bruises when he was first detained.

33.   On September 29, 2008, Prea'jhana also testified. Prea'jhana denied several of the things Defendant Sloan had reported that Prea'jhana told her foster mother, such as she had been on the birth control pill.

34.   As of October 27, 2008, Mrs. Anderson's visits with Samari had been restarted. Mrs. Anderson seen Samari on Sunday October 26, 2008, and was very concerned about a rash that Samari had on his bottom that wasn't being treated.

35.   Trail concluded on October 30, 2008. The court declared Samari a dependent of the juvenile court, and his custody was removed from his mother. Mrs. Anderson was granted reunification services in accordance with the case plan proposed by Defendant Sloan.

36.   November 12, 2008, Mrs. Anderson filed her notice of appeal of the juvenile court's orders.

37.   Beginning June 2009, Mrs. Anderson informed Defendant Mally that she had moved in with her aunt.

38.   In the middle of June 2009, Defendant Mally went to do an inspection of the home Mrs. Anderson was living in with her aunt. In fact Defendant Mally said the house was safe for Mrs. Anderson's children Samari and Nevaeh to live in.

39.   Beginning October 2009, Defendants began pursuing the termination of Mrs. Anderson's parental rights and the permanent separation of mother and child. In October 2009, Defendant Mally recommended that Samari be placed for adoption. Defendant Mally based his recommendation that Samari be adopted on Mrs. Anderson's alleged failure to secure adequate housing, failure to protect, to secure a mental health assessment, and to complete reunification services. Because of Defendants deliberate or reckless failure to investigate and assess readily available information that both supported the immediate reunification of Mrs. Anderson and Samari and showed numerous alternatives to adoption, the information on which these recommendations were based was false and materially incomplete. Mrs. Anderson had, in fact, secured safe and suitable housing, completed the parenting classes unlawfully and unnecessarily required of her, and even complied with HHSA's unlawful and arbitrary requirement of a mental health assessment.

40.   On October 30, 2009 the juvenile court of San Diego County accepted the recommendation of HHSA through Defendant Mally to hold a 366.26 hearing to terminate Mrs. Anderson's parental rights.

41.   On April 12th and 11th of 2010 the juvenile court set dates for Mrs.

45.   On information and belief, Defendants Paule, Cain and Doe HHSA Supervisors failed to properly or adequately train and supervise Defendant employees of HHSA about the federal and state Constitutional and federal and California statutory restrictions on their authority to separate children from their parents.

46.   On information and belief, Defendants Paule, Cain and Doe HHSA Supervisors knew or should have known that Defendant employees of HHSA had violated the constitutional and statutory rights of Plaintiffs and others, yet Defendants did not require appropriate training or re-training of the Defendant employees under their supervision and control. Defendants Paule, Cain and Doe knew or should have known that failure to provide appropriate training or re-training would result in future deprivations of Constitutional and statutory rights.

## F.   Unconstitutional Policy, Practice, Procedure or Custom Violations

47.   On information and belief, Defendant HHSA developed and maintained unconstitutional policies and customs exhibiting willful disregard of the constitutional and other rights of parents and children, including the following policies and customs, which proximately caused damages to Mrs. Anderson and her minor children, this was a deliberate indifference to the rights of Mrs. Anderson

a.   inadequately and improperly investigating allegations of abuse or neglect;

b.   inadequately supervising and training its caseworkers, including Defendants Sloan, Williamson, and Mally;

employees of HHSA about the federal and state Constitutional and federal and California statutory restrictions on their authority to separate children from their parents.

46.  On information and belief, Defendants Paule, Cain and Doe HHSA Supervisors knew or should have known that Defendant employees of HHSA had violated the constitutional and statutory rights of Plaintiffs and others, yet Defendants did not require appropriate training or re-training of the Defendant employees under their supervision and control. Defendants Paule, Cain and Doe knew or should have known that failure to provide appropriate training or re-training would result in future deprivations of Constitutional and statutory rights.

## F.  Policy and Practice Allegations

47.  On information and belief, Defendant HHSA developed and maintained unconstitutional policies and customs exhibiting willful disregard of the constitutional and other rights of parents and children, including the following policies and customs, which proximately caused damages to Mrs. Anderson and her minor children:

    a.  inadequately and improperly investigating allegations of abuse or neglect;

    b.  inadequately supervising and training its caseworkers, including Defendants Sloan, Williamson, and Mally;

    c.  seeking dependency orders for children who do not meet the statutory requirement of being without parental control and supervision;

d.  failing to allege, with the specificity required by law, facts that form the basis of dependency

e.  stipulating to dependency without providing record evidence sufficient to justify such a finding;

f.  imposing arbitrary, onerous, unlawful and irrelevant preconditions to the reunification of parents with their children;

g.  arbitrarily withholding mandated and available services that would alleviate dependency and/or achieve reunification;

h.  requiring mental health evaluations as a condition of reunification of parents and children;

i.  seeking separation of parents from their children despite the fact that the statutory requirement that there be no feasible alternatives to separation is not met;

j.  seeking retribution  against parents and others who lawfully question and/or oppose the illegitimate actions and conduct of the San Diego County Defendants;

k.  acting with intentional and/or reckless disregard of the Constitutional and statutory rights of individuals, including plaintiff herein and those similarly situated;

l.  arbitrarily discriminating against the Constitutional and statutory rights of individuals, including Plaintiff herein and those similarly situated with either or both intent to discriminate or through improper execution of its duties.

## COUNT 1
## <u>VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 AND THE 14TH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES</u>

### PROCEDURAL DUE PROCESS

48.  Plaintiff incorporates by reference, as if fully set forth herein, each and every one of the foregoing paragraphs.

49.  Defendant Williamson, Defendant Cornelius, Defendant Weber, and Defendant Rinder acted under color of state law when they seized Plaintiffs son Samari on April 4, 2008.

50.  Neither Defendant Williamson, Defendant Cornelius, Defendant Weber, nor Defendant Rinder sought, or received, prior judicial authorization for the seizure of Plaintiffs son Samari.

51.  Defendant Williamson, Defendant Cornelius, Defendant Weber, and Defendant Rinder seized Plaintiffs son Samari without any reason to believe he was abused, neglected or in danger of imminent harm.

52.  It is the policy, custom or practice of Defendant HHSA to seize minor children from their parents without prior judicial authorization; and without any reasonable basis to believe such seizure is necessary to protect the child from imminent harm.

53.  Defendant Williamson acted pursuant to this policy, custom or practice of Defendant HHSA when she seized Plaintiffs son Samari on April 4, 2008.

54.  Defendant Williamson, Defendant Cornelius, Defendant Weber, and Defendant Rinder's actions in seizing Plaintiffs son Samari were willful, wanton

and malicious.

55.   By their subsequent conduct, Defendant HHSA and all known and unknown supervisory employees of HHSA, Defendants herein, ratified the wrongful conduct of Defendants Williamson, Cornelius, Weber, and Rinder intentionally and/or recklessly or through improper discharge of their duties to oversee and supervise.

56.   As a result of the above described acts, Plaintiff Sierra Anderson was deprived of rights and liberties secured to her by the United States Constitution. Specifically, Sierra Anderson was deprived of the care, custody and companionship of her infant child without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

57.   As a result of the above described acts, Sierra Anderson was deprived of rights and liberties secured to her by the United States Constitution. Specifically, Sierra Anderson was deprived of the protection and companionship of her natural son without due process of law in violation of the Fourteenth Amendment to the United States Constitution.

## COUNT II

## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 AND THE 4TH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES

### UNREASONABLE SEARCH AND SEIZURE

58.   Plaintiff incorporates by reference, as if fully set forth herein, each and every one of the foregoing paragraphs.

59.   Defendant Williamson, Defendant Cornelius, Defendant Weber, and Defendant Rinder acted under color of state law when they seized Plaintiffs son

Samari on April 4, 2008.

60.   Defendant Williamson, Defendant Cornelius, Defendant Weber, and Defendant Rinder's seizure of Plaintiffs son Samari was without a warrant, without probable cause and was unreasonable under all of the circumstances.

61.   It is the policy, practice or custom of Defendant HHSA to seize minor children without warrant, probable cause or a reasonable basis to believe they have been abused, neglected or in danger of imminent harm.

62.   Defendant Williamson acted pursuant to this policy, practice or custom when she seized Plaintiffs son Samari on April 4, 2008.

63.   Defendant Williamson, Defendant Cornelius, Defendant Weber, and Defendant Rinder's actions in seizing Plaintiffs son Samari were willful, wanton and malicious.

64.   By their subsequent conduct, Defendant HHSA and all known and unknown supervisory employees of HHSA, Defendants herein, ratified the wrongful conduct of Defendants Williamson, Cornelius, Weber, and Rinder intentionally and/or recklessly or through improper discharge of their duties to oversee and supervise.

65.   As a result of the above described acts, Sierra Anderson was deprived of rights and liberties secured to her by the United States Constitution. Specifically, Sierra Anderson was deprived of the right to be free of unreasonable searches and seizures in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

## COUNT III
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 AND THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES

## SUBSTANTIVE DUE PROCESS

66.   Plaintiff incorporates by reference, as if fully set forth herein, each and every one of the foregoing paragraphs.

67.   The separation of Sierra Anderson from her infant child, Samari, was without any factual or legal basis and constituted an arbitrary and unconscionable abuse of government authority.

68.   The imposition of unlawful, onerous and irrelevant preconditions to the reunification of Mrs. Anderson and Samari was intended to or was reasonably likely to destroy the sacred bond between mother and child and constituted an arbitrary and unconscionable abuse of government authority.

69.   Defendants' attempt to terminate Mrs. Anderson's parental rights with respect to Samari based on their own willful failure to investigate and assess the factual basis underlying the allegations of dependency was an arbitrary and unconscionable abuse of government authority.

70.   Defendants' conduct in separating Samari and Sierra Anderson, imposing unlawful, irrelevant and onerous preconditions to the reunification of the Anderson family; and attempting to permanently terminate Mrs. Anderson's parental rights was willful, wanton and malicious and shocks the conscience.

71.   It is the policy, practice and custom of Defendant HHSA to fail to investigate the factual basis of dependency; to impose unlawful, onerous and irrelevant conditions on reunification of mother and child; and to seek termination of parental rights without sufficient factual or legal basis.

72.   Defendants Williamson, Sloan, and Paule acted pursuant these policies, practices or customs of Defendant HHSA when they initiated and continued dependency proceedings and separated Samari from Sierra Anderson and deprived

Sierra Anderson of sole custody of Samari from April 4, 2008 to present.

73.   By their subsequent conduct, Defendant HHSA and all known and unknown supervisory employees of HHSA, Defendants herein, ratified the wrongful conduct of Defendants Williamson, Sloan and Mally intentionally and/or recklessly or through improper discharge of their duties to oversee and supervise.

74.   As a result of the described acts, Plaintiff Sierra Anderson was deprived of rights and liberties secured to her by the United States Constitution. Specifically, Sierra Anderson was deprived of the right to familial integrity and association protected by the substantive component of the due process clause of the Fourteenth Amendment to the United States Constitution.

## COUNT IV

## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 AND THE FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES

### EQUAL PROTECTION

75.   Plaintiff incorporates by reference, as if fully set forth herein, each and every one of the foregoing paragraphs.

76.   Defendant HHSA and its employee Defendants above described conduct in withholding and refusing to provide available and mandated services that would have prevented dependency and/or placement and/or effected reunification amount to unlawful discrimination.

77.   Defendants conduct was vindictive, intentionally treated Plaintiff differently without rational basis both as an individual and as distinguished from those similarly situated to Plaintiff. Defendant conduct was either motivated by ill-will or was undertaken with the intent to deprive Plaintiff Sierra Anderson of her

rights or with reckless disregard of those rights.

78.  Defendants conduct as above set forth was wholly unrelated to any legitimate governmental objective and was irrational and wholly arbitrary or otherwise constituted arbitrary discrimination through improper execution of its legal obligations effecting a denial of equal protection of the laws guaranteed to the Plaintiff under the 14th Amendment to the United States Constitution.

## COUNT V
## VIOLATION OF THE CALIFORNIA CONSTITUTION, ARTICLE I, SECTION 7

### DUE PROCESS

79.  Plaintiff incorporates by reference, as if fully set forth herein, each and every one of the foregoing paragraphs.

80.  As a result of Defendants' acts as described above in counts I, II, III, and IV, Plaintiff Sierra Anderson was deprived of rights and liberties secured to her by the California Constitution. Specifically, Sierra Anderson was deprived of the right to familial integrity and association protected by Article I, Section 7 of the California Constitution.

## COUNT VI
## UNREASONABLE SEARH AND SEIZURE

81.  Plaintiff incorporates by reference, as if fully set forth herein, each and every one of the foregoing paragraphs.

82.  As a result of Defendants' acts as described above in Counts I, II, III, and IV, Plaintiff Sierra Anderson was deprived of rights and liberties secured to her by

the California Constitution. Specifically, Sierra Anderson was deprived of the right to be free from unreasonable searches and seizures protected by Article I, Section 13 of the California Constitution.

## COUNT VII
## VIOLATION OF THE CALIFORNIA CONSTITUTION, ARICLE I, SECTION 7

### EQUAL PROTECTION

83. Plaintiff incorporates by reference, as if fully set forth herein, each and every one of the foregoing paragraphs.

84. Defendant HHSA and its employee Defendants above described conduct in withholding and refusing to provide available services that would have prevented dependency and/or placement and/or effected reunification amount to unlawful discrimination in violation of the equal protection component of the Constitution of the Commonwealth of California.

## COUNT VIII

### FALSE IMPRISONMENT

85. Plaintiff incorporates by reference, as if fully set forth herein, each and every one of the foregoing paragraphs.

86. Plaintiffs son Samari Anderson was unlawfully detained by Defendants on April 4, 2008.

87. Defendants detained Plaintiffs son Samari intentionally.

88. Plaintiff suffered damage as a proximate cause of Defendants' unlawful and intentional acts.

## COUNT IX

## <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

89.  Plaintiff incorporates by reference, as if fully set forth herein, each and every one of the foregoing paragraphs.

90.  The conduct of Defendants, as described above, was intentional, extreme, and outrageous, without privilege or justification and transcended all bounds of decency.

91.  Defendants intended by their conduct to inflict emotional distress upon Plaintiff Sierra Anderson or knew or should have known that emotional distress was the certain consequence of such illegal, reckless, unwarranted, extreme and outrageous actions.

92.  Defendants actions described above did actually and proximately cause Plaintiff to suffer extreme emotional distress.

93.  Said conduct, described above, constitutes intentional infliction of emotional distress to Plaintiff for which Defendants are liable under the laws of the Commonwealth of California for the damages caused to Plaintiff.

### COUNT X

### <u>ABUSE OF PROCESS</u>

94.  Plaintiff incorporates by reference, as if fully set forth herein, each and every one of the foregoing paragraphs.

95.  Defendants used legal processes for purposes for which they were not designed resulting in the seizure of Samari and the prolonged separation of Samari from his mother.

96.  Defendants' wrongful conduct constitutes abuse of process, which caused damage to Plaintiff and for which Defendants are liable under the laws of the Commonwealth of California.

## COUNT XI
## WRONGFUL USE OF POLICY PROCEDURES

97.  Plaintiff incorporates by reference, as if fully set forth herein, each and every one of the foregoing paragraphs.

98.  Defendants took part in the procurement, initiation, and continuation of dependency proceedings against Sierra Anderson. Specifically, Defendants sought and order of dependency with respect to Mrs. Anderson's minor child, Samari.

99.  Defendants acted without probable cause and primarily for a purpose other than that of securing the proper discovery, or adjudication of the claim in which the proceedings were based.

100.  The proceedings have terminated in favor of Mrs. Anderson.

101.  Defendants' wrongful conduct constitutes wrongful use of dependency proceedings, which caused damage to Plaintiff and for which Defendants are liable under the laws of the Commonwealth of California.


## COUNT XIII
## INVASION OF PRIVACY

102.  Plaintiff incorporates by reference, as if fully set forth herein, each and every one of the foregoing paragraphs.

103.  Defendants intentionally intruded on the solitude or seclusion of Sierra Anderson.

104.  Defendants' intrusion into the private affairs of Mrs. Anderson was substantial and highly offensive to a reasonable person.

105.  Defendants' wrongful conduct constitutes invasion of privacy, which caused damage to Plaintiff and for which Defendants are liable under the laws of the Commonwealth of California.

## COUNT XIV
## ASSAULT

106.   Plaintiff incorporates by reference, as if fully set forth herein, each and every one of the foregoing paragraphs.

107.   Defendant's Cornelius, Rinder, and Weber entered upon the premises of Mrs. Anderson's residence without a warrant or legal authority.

108.   Defendant's Cornelius, Rinder, and Weber unlawfully interfered with Mrs. Anderson's parent-child relationship with Samari and intentionally threatened her with physical restraint, unlawful touching without her consent, all of which caused Mrs. Anderson to be in immediate fear and apprehension of an immediate battery upon her person.

109.   Defendants' wrongful conduct constitutes assault, which caused damage to Plaintiff and for which Defendants are liable under the laws of the Commonwealth of California.

## COUNT XV
## PUNITIVE DAMAGES

110.   Plaintiff incorporates by reference, as if fully set forth herein, each and every one of the foregoing paragraphs.

111.   Defendants actions, as described above, were willful, wanton, malicious and outrageous.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment in their favor and the following relief against Defendants:

        a.   award Plaintiff compensatory damages;

        b.   award Plaintiff punitive damages against the individual Defendants; and

        c.   award Plaintiff such further relief as this Court deems just and appropriate.

Respectfully submitted,
Sierra Anderson

Dated: March 28, 2010

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
*Sierra Anderson*

## DEFENDANTS
*City of Lemon Grove, Lemon Grove Sheriffs Dept, Det Cornelius, officer Ricker, officer Grinder, personal and entities unknown, County of San Diego Health and Human Services, protective service workers, Shelly Paule, Tonya Sloan, Silvia Williams, Ryan marley, personal entities unknown*

**(b)** County of Residence of First Listed Plaintiff *San Diego*
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant *San Diego*
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
*Request For Council*

Attorneys (If Known)

**'10 CV 0689 NEG    AJB**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine / **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☒ 440 Other Civil Rights / ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
*Deprivation of rights under color of law title 18 U.S.c Sec. 242*
Brief description of cause:
*Pattern of practice title 42 V.S.c Sec 14141*

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE

DOCKET NUMBER

DATE *March 31, 2010*

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____