1

2

3

4

5

6

7

## UNITED STATES DISTRICT COURT

8

## SOUTHERN DISTRICT OF CALIFORNIA

9

10

SIERRA ANDERSON, an individual,

CASE NO. 10-CV-0689 - IEG (RBB)

11

Plaintiff,

**ORDER:**

12

vs.

**(1) GRANTING IN PART AND
DENYING IN PART COUNTY
DEFENDANTS' MOTION TO
DISMISS**

13

14

15

CITY OF LEMON GROVE; LEMON
GROVE SHERIFF'S DEPARTMENT; DET.
CORNELIUS; OFFICER WEBER;
OFFICER RINDER; AND PERSON
ENTITIES UNKNOWN; COUNTY OF SAN
DIEGO HEALTH AND HUMAN
SERVICES AGENCY AND SAN DIEGO
COUNTY PROTECTIVE SERVICES
WORKERS; SHELLY PAULE; TONYA
SLOAN; SILVIA WILLIAMSON; RYAN
MALLY; CONNIE CHAN; CANDACE
COHEN; AND PERSONS AND
ENTITIES UNKNOWN,

**(2) GRANTING DEFENDANT
CITY OF LEMON GROVE'S
MOTION TO DISMISS**

[Doc. Nos. 17, 18]

16

17

18

19

20

21

22

Defendants.

23

24

This case arises from constitutional injuries Plaintiff allegedly sustained when County

25

officials removed her seven month old child from her custody.  Presently before the Court are

26

motions to dismiss brought by (1) the County Defendants,[1] and (2) the City of Lemon Grove.  For

27

the reasons stated herein, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to

28

---

[1]  The County Defendants include:  Lemon Grove Sheriff's Department, Cornelius, Weber, Rinder, County of San Diego Health and Human Services Agency and San Diego County Protective Services Workers, Shelly Paule, Tonya Sloan, Silvia Williamson, Connie Cain, and Candace Cohen.

dismiss brought by the County Defendants and **GRANTS** the motion to dismiss brought by the City of Lemon Grove.

### BACKGROUND

Plaintiff's complaint arises from injuries she allegedly sustained when San Diego County Health and Human Services Agency (the "Agency") removed her seven month old son, S, from her custody, as well as injuries she allegedly sustained as a result of the continued detention of her son. The following facts are all taken from Plaintiff's complaint.

On March 30, 2008, Sheriff's deputies went to Plaintiff's residence to investigate a report of domestic violence involving Plaintiff's husband, Percy, and Plaintiff's 16-year old sister, JR. Because there were children living in the home, the report prompted an Agency investigation. On April 1, 2008, a detective and Agency social worker, Defendant Williamson, interviewed JR at her school. JR reported that she hit Percy with a mop and that Percy had pushed or kicked his oldest daughter, P, down some stairs on March 29, 2008. On April 3, the same detective interviewed P, who denied physical abuse by Percy, but admitted Percy had been upset with her. On April 4, 2008, Defendant Williamson interviewed S's half-siblings, and they denied being abused or seeing any incident between Percy and P.

The same day, April 4, 2008, Defendant Williamson, along with Defendants Cornelius, Weber and Rinder, removed S (and S's half-siblings) from Plaintiff's custody. Defendant Williamson told Plaintiff the children were being removed because of domestic violence between Percy and JR.

On April 9, 2008, an Agency social worker, Defendant Sloan, filed a dependency petition alleging that one of S's half-siblings had been raped and sexually abused by Percy, resulting in risk to S under California Welfare and Institutions Code § 300(j). At a detention hearing the same day, the court ordered that S be placed in foster care. On April 23, 2008, S's half-siblings were interviewed again and reported being whipped with a belt and seeing Percy hit and push P, who fell down some stairs. A social worker generated a jurisdiction/disposition report recommending that S be declared a dependent child under section 300 of the California Welfare and Institutions Code and placed in foster care.

1        In August 2008, the Superior Court terminated Plaintiff's visits with S.  A dependency

2  petition trial began on September 29, 2008 and concluded October 30, 2008, at which time the

3  juvenile court declared S a dependent of the court and proposed a family reunification plan.

4  Plaintiff appealed the trial court's order on November 12, 2008.

5        One year after the dependency trial findings, in October 2009, a social worker

6  recommended Plaintiff's parental rights be terminated and that S be placed for adoption due to

7  Plaintiff's failure to secure adequate housing, to protect, to secure a mental health assessment, and

8  to complete reunification services.  On October 30, 2009, the court accepted the Agency's

9  recommendation to proceed on hearings to terminate Plaintiff's parental rights.

10        Plaintiff filed a complaint in this Court on April 1, 2010.  (Doc. No. 1.)  The County

11  Defendants and the City of Lemon Grove filed motions to dismiss.  (Doc. Nos. 17, 18.)  Plainitff

12  filed an opposition, and Defendants filed replies.  (Doc. Nos. 24, 28-29.)  Following a September

13  7, 2010 hearing on Defendants' motions to dismiss, the Court instructed County Defendants to

14  obtain records from the juvenile court proceedings and file them under seal.  (Doc. Nos. 30, 31.)

15  The Court received those records on March 10, 2011.[2]

16  **LEGAL STANDARD**

17        A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests

18  the legal sufficiency of the claims asserted in the complaint.  Fed. R. Civ. P. 12(b)(6); Navarro v.

19  Block, 250 F.3d 729, 731 (9th Cir. 2001).  The court must accept all factual allegations pled in the

20  complaint as true, and must construe them and draw all reasonable inferences from them in favor

21  of the nonmoving party.  Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).

22  To avoid a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations,

23  rather, it must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl.

24  _____

25      [2]  The Court takes judicial notice of all juvenile court records submitted under seal.  Rule 201
of the Federal Rules of Evidence allows the Court to take judicial notice of matters that are "capable

26  of accurate and ready determination by resort to sources whose accuracy can not reasonably be
questioned."  Materials from a proceeding in another tribunal are appropriate for judicial notice.  Biggs

27  v. Terhune, 334 F.3d 910, 916 n.3 (9th Cir. 2003), overruled on other grounds by Hayward v.
Marshall, 603 F.3d 546 (9th Cir. 2010).  The Court also takes judicial notice of the California Supreme

28  Court's October 2009 denial of Plaintiff's petition for review.  See Cal. App. Courts, available at:
http://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=41&doc_id=1381013&doc_no
=D054070  (last visited March 17, 2011).

1   Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility when the plaintiff

2   pleads factual content that allows the court to draw the reasonable inference that the defendant is

3   liable for the misconduct alleged." Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009)

4   (citing Twombly, 550 U.S. at 556).

5          However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

6   requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

7   action will not do." Twombly, 550 U.S. at 555 (citation omitted).  A court need not accept "legal

8   conclusions" as true. Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  In spite of the deference the

9   court is bound to pay to the plaintiff's allegations, it is not proper for the court to assume that "the

10   [plaintiff] can prove facts that [he or she] has not alleged or that defendants have violated the . . .

11   laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State

12   Council of Carpenters, 459 U.S. 519, 526 (1983).

13          In addition, factual allegations asserted by pro se plaintiffs, "however inartfully pleaded,"

14   are held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner,

15   404 U.S. 519-20 (1972).  Thus, where a plaintiff appears in propria persona in a civil rights case,

16   the Court must construe the pleadings liberally and afford plaintiff any benefit of the doubt. See

17   Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623 (9th Cir.1988).

18          Nevertheless, and in spite of the deference the court is bound to pay to any factual

19   allegations made, it is not proper for the court to assume that "the [plaintiff] can prove facts which

20   [he or she] has not alleged." Associated General Contractors of California, Inc. v. California State

21   Council of Carpenters, 459 U.S. 519, 526 (1983).  Nor must the court "accept as true allegations

22   that contradict matters properly subject to judicial notice or by exhibit" or those which are "merely

23   conclusory," require "unwarranted deductions" or "unreasonable inferences." Sprewell v. Golden

24   State Warriors, 266 F.3d 979, 988 (9th Cir.) (citation omitted), amended on other grounds, 275

25   F.3d 1187 (9th Cir.2001); see also Ileto v. Glock Inc., 349 F.3d 1191, 1200 (9th Cir. 2003) (court

26   need not accept as true unreasonable inferences or conclusions of law cast in the form of factual

27   allegations).

28   ///

1   **DISCUSSION**

2   **I.    County Defendants' Motion to Dismiss**

3        **A.    Affirmative Defenses**[3]

4        In their motion to dismiss County Defendants argue that allowing Plaintiff to proceed on

5   her claims would require the relitigation of issues that were tried and decided in the state court

6   dependency proceedings.  See County Def.'s Mot. at 4-9.  Accordingly, Defendant maintains that

7   Plaintiff's claims are subject to dismissal based on the Rooker-Feldman doctrine, claim preclusion,

8   and issue preclusion.  Id.

9        1.    Rooker-Feldman Doctrine

10       Under the Rooker-Feldman doctrine, a federal district court does not have jurisdiction to

11  hear a direct appeal from a final state court judgment.  See Noel v. Hall, 341 F.3d 1148, 1154 (9th

12  Cir. 2003).  The Rooker-Feldman doctrine also applies to de facto appeals, as well as any issue that

13  is "inextricably intertwined" with the state court judgment from which the forbidden de facto

14  appeal is brought.  Id. at 1158.  The Court agrees with the County Defendants that Plaintiff's

15  claims arise from the same of set of events underlying the state court dependency proceedings.

16  However, because Plaintiff does not seek relief from that judgment or allege injuries arising

17  directly therefrom, the Court concludes that this case falls outside the narrow range of cases the

18  Ninth Circuit has deemed appropriate for application of the Rooker-Feldman doctrine.  See Noel,

19  341 F.3d at 1163.  To the extent Plaintiff asserts a claim that "denies a legal conclusion that the

20  state court has reached," principles of preclusion determine whether the County Defendants prevail

21  based upon the state court judgment.  Id. at 1164 (quoting GASH Assocs. v. Village of Rosemont,

22  Ill., 995 F.2d 726, 728-29 (7th Cir. 1993) (Easterbrook, J.)).

23       2.    Claim Preclusion

24        Claim preclusion and issue preclusion are governed by state law.  28 U.S.C. § 1738;

25  Marrese v. Am. Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985); Ayers v. City of

26  ─────────────────────

27       [3]   In addition to the affirmative defenses that follow, County Defendants maintain they are immune from suit.  See County Defs.' Mot. at 15.  However, because they have not specified which
28  Defendants are immune or articulated the scope of such immunity and how it relates to Plaintiff's causes of action or the underlying conduct relating thereto, County Defendants have failed to establish an immunity defense at this time.

5

1    Richmond, 895 F.2d 1267, 1270 (9th Cir. 1990).  Claim preclusion bars a second lawsuit between

2    the same parties on the same cause of action.  People v. Barragan, 83 P.3d 480, 492 (Cal. 2004).  In

3    their motion to dismiss, County Defendants do not identify which of the present Defendants were

4    also parties to the first action in Superior Court.  See Mycogen Corp. v. Monsanto Co., 51 P.3d 297

5    (Cal. 2002) (explaining claim preclusion applies to actions "between the same parties").  Nor do

6    the County Defendants identify which, if any, of Plaintiff's claims could have been asserted in the

7    prior action in juvenile court.  See Hulsey v. Koehler, 218 Cal. App.3d 1150, 1157 (Cal. Ct. App.

8    1990) (explaining that claim preclusion applies to "every matter which was urged, and every matter

9    which might have been urged").  Accordingly, the Court concludes that the County Defendants

10   have not established a claim preclusion defense.

11                  3.      Issue Preclusion

12         Issue preclusion, or collateral estoppel, precludes the relitigation of issues that were

13   actually tried and litigated in prior proceedings.  Lucido v. Superior Court, 795 P.2d 1223, 1225

14   (Cal. 1990).  The doctrine applies if threshold requirements are met: (1) the issue to be precluded

15   must be identical to that decided in the prior proceeding, (2) the issue must have been actually

16   litigated at that time, (3) the issue must have been necessarily decided, (4) the decision in the prior

17   proceeding must be final and on the merits, and (5) the party against whom preclusion is sought

18   must be in privity with the party to the former proceeding."  People v. Garcia, 141 P.2d 197, 201

19   (Cal. 2006).

20                  a.      Initial Removal of Plaintiff's Children

21         Plaintiff alleges that, on April 4, 2008, Defendants Williamson, Rinder, Weber, and

22   Cornelius removed S from her custody.  See Compl. ¶ 18.  When Plaintiff asked Defendant

23   Williamson to see a warrant or court order, Williamson told her "no, wait until court when the

24   other social worker gets on your case."  Id.  Plaintiff also alleges that Defendants did not have "any

25   factual basis to believe that [S] had been abused, neglected or was in danger of imminent harm,

26   and without permitting less restrictive means to alleviate any threat that the alleged condition of

27   [Plaintiff's] residence constituted to [S's] safety."  Id. ¶ 24.

28         The County Defendants submitted under seal juvenile records indicating that, at the April 9,

                                                    6

2008 detention hearing, the Agency presented the juvenile court with evidence supporting the lawfulness of the initial removal. However, the records do not establish that the lawfulness of the initial removal was "actually litigated." Nor was that issue essential to the court's ruling that continued detention of the child was necessary. See Cal. Welf. & Inst. Code §§ 315, 319. Therefore, the issue was not "necessarily decided." See Ortega v. Clark, 2011 WL 836436, at *10 (E.D. Cal. Mar. 3, 2011) ("The determination of whether an issue was necessarily decided turns on whether the issue of fact or law was actually litigated and determined by a valid and final judgment and is *essential* to that judgment.") (emphasis added). Accordingly, the County Defendants have not established an issue preclusion defense as to the initial removal of Plaintiff's son.

### b. *Continued Detention of Plaintiff's Children*

Plaintiff also disputes the lawfulness of the continued detention of her son. However, the juvenile records establish that the juvenile court and the California Court of Appeal conclusively determined that the Agency was justified in its continued detention of Plaintiff's son. Following the April 9, 2008 detention hearing, and following a contested adjudication that concluded on October 30, 2008, the juvenile court concluded that continued detention of the child was necessary, and that there was no reasonable means to protect the child's health without removing him from Plaintiff's custody. On appeal of the juvenile court's findings and orders, Plaintiff argued that the juvenile court erred when it removed her son from her custody. The California Court of Appeal disagreed, concluding that Plaintiff's argument was "meritless" and contradicted by "overwhelming evidence." The Supreme Court of California denied Plaintiff's petition for review in October 2009. Because the state court proceedings conclusively decided the lawfulness of the continued detention of Plaintiff's son, Plaintiff is precluded from relitigating those issues in this Court. The Court **DISMISSES WITH PREJUDICE** Plaintiff's claims to the extent she disputes the lawfulness of the continued detention of her son.

### B.    Section 1983 Claims

Section 1983 creates a cause of action against any person who, acting under color of state law, deprives a person of his or her constitutional rights. See 42 U.S.C. § 1983.

1            1.      Unlawful Seizure[4]

2        The seizure of S does not implicate Plaintiff's Fourth Amendment rights.  See P.C.

3   Connecticut Dept. of Children and Families, 662 F. Supp.2d 218, 232 (D. Conn. 2009) (holding

4   that seizure of children did not implicate the Fourth Amendment rights of the children's parents)

5   (citing cases).  Meanwhile, Plaintiff cannot bring a claim on behalf of her son while acting in pro

6   per.  See Johns v. County of San Diego, 114 F.3d 874, 877 (9th Cir. 1997) (holding that a guardian

7   or parent cannot bring a lawsuit on behalf of a minor child without retaining a lawyer).  Even if

8   Plaintiff were represented by counsel, she would lack standing to pursue a Fourth Amendment

9   claim on S's behalf.  Compare Compl. ¶ 18 (alleging County Defendants seized S, not Plaintiff),

10  with Osborne v. County of Riverside, 385 F. Supp.2d 1048, 1052 (C.D. Cal. 2005) ("a person does

11  not have standing to vicariously assert the Fourth Amendment rights of another person.") (citing

12  Moreland v. Las Vegas Metro. Police Dept., 159 F.3d 365, 369 (9th Cir. 1998).  Accordingly, the

13  Court also **DISMISSES WITH PREJUDICE** Plaintiff's Fourth Amendment claim.

14           2.      Due Process

15       The Fourteenth Amendment protects the right to familial association and guarantees that

16  parents cannot be separated from their children without due process of law, except in emergencies.

17  Mabe v. San Bernardino County Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1107 (9th Cir. 2001).

18  Accordingly, government officials may not remove children from their parents' custody unless they

19  have "reasonable cause to believe that the child is likely to experience serious bodily harm in the

20  time that would be required to obtain a warrant."  Rogers v. County of San Joaquin, 487 F.3d

21  1288, 1294 (9th Cir. 2007); see also Cal. Welf. & Inst. Code § 305(a) (requiring that a peace

22  officer have "reasonable cause" for believing a minor is in imminent danger of abuse to take the

23  minor into temporary custody without a warrant).

24       Plaintiff has alleged facts giving rise to a claim that Defendants Cornelius, Rinder, Weber

25  and Williamson violated her Fourteenth Amendment rights when they entered her home and

26  removed S without her consent and without a warrant.  The Court **DENIES** the County

27  Defendants' motion to dismiss Plaintiff's Fourteenth Amendment claims as they relate to

28

---

[4]  Plaintiff uses the term "unreasonable search and seizure," but she does not allege the officers or social workers searched her home.

1   Defendants Cornelius, Rinder, Weber, and Williamson.  However, because Plaintiff's amended

2   complaint does not contain allegations against any other individuals, the Court **DISMISSES**

3   **WITHOUT PREJUDICE** Plaintiff's Fourteenth Amendment claims against all other individual

4   County Defendants.

5                    3.    Equal Protection

6          Plaintiff has also asserted an equal protection claim.  See Compl. ¶¶ 76-78.  As County

7   Defendants note, Plaintiff has not identified a legislative classification or alleged facts showing she

8   was a member of a definable group which Defendants intentionally treated differently than others

9   similarly situated.  See generally Compl.  Plaintiff alleges that Defendants "intentionally treated

10  Plaintiff differently without rational basis."  Id. § 77.  However, the Court need not accept "legal

11  conclusions" as true, Iqbal, 129 S.Ct. at 1949, and Plaintiff has not alleged facts to support her

12  contention that Defendants intentionally treated her differently without a rational basis.

13  Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's equal protection claim.

14         **C.    State Law Claims**

15         Plaintiff has asserted a number of state law claims.  Under the California Tort Claims Act

16  (CTCA), a plaintiff may not maintain an action for damages against a public entity or a public

17  employee unless he timely files a notice of tort claim.  Cal. Gov't Code §§ 905, 911.2, 945.4 &

18  950.2; Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir.1995) ("The

19  California Tort Claims Act requires, as a condition precedent to suit against a public entity, the

20  timely presentation of a written claim and the rejection of the claim in whole or in part.").  A

21  plaintiff's failure to allege compliance with the presentation requirement of the CTCA results in

22  dismissal of the state law claim.  Because Plaintiff has not alleged that she complied with the

23  CTCA prior to initiating this action, see generally Compl., the Court **DISMISSES WITHOUT**

24  **PREJUDICE** Plaintiff's state law claims.

25  **II.    Defendant City of Lemon Grove's Motion to Dismiss**

26         The City of Lemon Grove ("the City") acknowledges Plaintiff's allegations regarding the

27  "Lemon Grove Sheriff's Department" and asserts that, while there is a Sheriff's Department

28  substation in Lemon Grove, the Sheriff's Department is a County entity not subject to the control

    or oversight of the City.  See Def.' City's Mot. at 2.  According to the City, Plaintiff's complaint

                                                        9

1  does not contain a single allegation against the City, its officers or its employees.  Id. at 3.  The

2  Court grants the City's request for judicial notice of a public record indicating that the Sheriff's

3  Department substation in Lemon Grove is a County entity.  See Def. City's Request for Judicial

4  Notice, Att. 1.  Because Plaintiff's complaint does not contain any allegations against the City, its

5  officers, or its employees, the Court **DISMISSES WITH PREJUDICE** Plaintiff's claims against

6  the City.

7  **CONCLUSION**

8  Based on the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** County

9  Defendants' motion to dismiss and **GRANTS** the City of Lemon Grove's motion to dismiss.

10  In accordance with the foregoing, the Court **DISMISSES WITH PREJUDICE** the

11  following claims:

12  -  Plaintiff's second cause of action.

13  -  Plaintiff's first and third causes of action, except as they relate to the initial removal

14  of Plaintiff's son.

15  The Court **DENIES** the County Defendants' motion to dismiss Plaintiff's first and third

16  causes of action as they relate to the initial removal of Plaintiff's son.

17  The Court **DISMISSES WITHOUT PREJUDICE** the following claims:

18  -  Plaintiff's fourth, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, thirteenth,

19  fourteenth, and fifteenth causes of action.

20  The Court **DISMISSES WITHOUT PREJUDICE** all Defendants except Defendants

21  Cornelius, Rinder, Weber, and Williamson.

22  If Plaintiff wishes to file an amended complaint, she should do so **within 21 days** of the

23  filing of this order.  The amended complaint should only make the revisions discussed above,

24  should be a complete document without reference to any prior pleading, and should not add any

25  new causes of action.

26  **IT IS SO ORDERED.**

27  **DATED:   March 29, 2011**

28  
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**